UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEPHEN BERRY and
GWENDOLYN BERRY,

                        Plaintiffs,

                    **DECISION AND ORDER**
                        08-CV-18A

      v.

NATIONAL FINANCIAL SYSTEMS, INC.,

                        Defendant.

**INTRODUCTION**

Plaintiffs Stephen and Gwendolyn Berry filed a complaint in this case on January 10, 2008, accusing defendant National Financial Systems, Inc. of multiple violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p. Plaintiffs served defendant with the summons and complaint, but defendant failed to answer or appear. On July 10, 2009, this Court granted plaintiffs' motion for default judgment and ordered an evidentiary hearing as to damages. The hearing occurred on August 13, 2009, at which plaintiffs testified and submitted exhibits pertaining to defendant's conduct. Given the allegations that defendant is deemed to have admitted by default, and given the evidence that plaintiffs submitted at the evidentiary hearing, the Court awards damages along with costs and fees as described below.

## BACKGROUND

This case concerns defendant's conduct in attempting to collect on a credit card debt totaling less than $800. In early 2007, Mr. Berry incurred a debt (the "Debt") on a Household Bank Platinum MasterCard account maintained by HSBC Bank. *Exhibit 1* from the evidentiary hearing, an undated statement for this account, states that Mr. Berry's balance in early 2007 was $691.99, with a payment due on March 8, 2007. The statement also contains a notice that the account "has been placed with a collection agency." Plaintiffs do not contest that Mr. Berry defaulted on the Debt.

According to the complaint, defendant called Mr. Berry by telephone in June 2007. During the ensuing conversation, defendant asked Mr. Berry to issue a post-dated check that would pay the Debt in part. Mr. Berry objected, telling defendant that he did not have sufficient funds in his checking account to cover any such check that he issued. Defendant pressured Mr. Berry to issue a post-dated check anyway, claiming that if he did not then HSBC Bank would take him to court and the Debt would increase to $12,000. In response to this threat, Mr. Berry reluctantly agreed to issue a post-dated check. *Exhibit 2* from the evidentiary hearing is a letter from defendant to Mr. Berry, dated June 21, 2007, stating that the Debt at that time was $770.09 and that Mr. Berry's post-dated check would be cashed on June 29, 2007 in that amount. When defendant

attempted to cash Mr. Berry's check, the check did not clear due to insufficient funds. Mr. Berry incurred bank fees as a result.

In July 2007, defendant called plaintiffs' residence and spoke to Mrs. Berry by telephone. During the conversation, Mrs. Berry specifically requested the caller to identify himself. The caller refused to do so. On or about July 30, 2007, defendant called plaintiffs' residence and left a message on plaintiffs' answering machine. The microcassette tape containing defendant's message was entered into evidence at the evidentiary hearing as *Exhibit 3*. Defendant's message played as follows:

> Good morning Stephen Berry, Mr. Holbert's[1] office, uh, Mr. Berry you've got quite a serious situation here on your hands regarding the arrangements that you and I had set forth. Uh, literally you've gone from the pot directly into the fire but I don't think that you did it on purpose. There must have been a problem that was out of your control and if you're having a difficult time that's understandable, I can appreciate that but I need to hear from you immediately. Uh, I got a call from my client Friday so as long as you give me a call we'll do what we can to help you straighten this out but if I don't hear back from you, Mr. Berry, rest assured, my client's already given me the authorization to do what's necessary to protect their interests so, I explained to them you were sincere, I don't think it was done intentionally, they seem to think otherwise, but . . . . [answering machine beeps to signal that the maximum message length has been reached, ending the call].

In or about August 2007, Mr. Berry called defendant with the intention of negotiating a payment plan to repay the Debt. During that conversation, defendants informed Mr. Berry that "it has gone too far, our client has authorized

---

[1]An approximate spelling. The exact name is difficult to hear on the tape.

3

us to sue you." Defendants then asked Mr. Berry for the name of his lawyer. Later that month, defendant called plaintiffs' residence and spoke with Mrs. Berry. When Mrs. Berry answered the telephone, defendant asked to speak with Mr. Berry. When Mrs. Berry informed defendant that Mr. Berry was not available, defendant responded, "What did you do, kick him out?" Mrs. Berry then asked the caller to identify himself and his company. The caller refused to do so.

On January 10, 2008, plaintiffs filed the complaint in this case. The complaint contained a single claim that defendant committed multiple violations of the FDCPA. Specifically, plaintiffs alleged the following:

> Defendant violated 15 U.S.C. § 1692e, 15 U.S.C.§ 1692e(5), 15 U.S.C. § 1692e(10), [15] U.S.C. § 1692f, and 15 U.S.C.§ 1692f(1) by misrepresenting that
> 1. Defendant and/or HSBC Bank had intended to, or had decided to, file a lawsuit against Stephen Berry to collect the subject debt, and that Bank of America had authorized the commencement of such a suit.
> 2. That the debt would increase from $770.00 to $12,000.00 if Stephen Berry was sued on the subject debt.
>
> Defendant violated 15 U.S.C. § 1692d and 15 U.S.C. § 1692d(2) by asking Gwendolyn Berry if she had kicked Stephen Berry out of their home.
>
> Defendant violated 15 U.S.C. § 1692b(1) and [15] U.S.C. § 1692d(6) by failing to identify himself during their two telephone conversations with Gwendolyn Berry.
>
> Defendant violated 15 U.S.C. § 1692d and 15 U.S.C. § 1692d(2) by stating to Plaintiff Gwendolyn Berry, "What did you do, kick him out?" as alleged in paragraph 19 herein.

(Dkt. No. 1 ¶¶ 24–25.)

According to the docket, plaintiffs served defendant on January 24, 2008. Defendant never answered the complaint or otherwise appeared. Accordingly, plaintiffs requested an entry of default on March 1, 2009. The Clerk of the Court filed an entry of default on March 2, 2009. On March 23, 2009, plaintiffs filed a motion for default judgment as to liability and for a jury trial as to damages. In the papers in support of the motion for default judgment, counsel for plaintiffs set forth that they had communicated with in-house counsel for defendant but that attempts to settle the case failed. Counsel for plaintiffs set forth also that defendant did not respond to their last two letters, and that defendant appeared to have employed a strategy of intentional default. The Court held oral argument on the motion for default judgment on July 10, 2009. The Court granted the motion orally and decided that an evidentiary hearing as opposed to a jury trial would suffice to establish damages.

On August 13, 2009, the Court held the evidentiary hearing. Mr. Berry testified at the hearing. He is 59 years old and worked for 28 years as a New York State corrections guard, but stopped working in 2004 because of injuries. His current income consists of Social Security Disability in the amount of approximately $1,000 per month, plus a pension that amounts to approximately $1,000 per month. Along with other testimony that corroborated the allegations in the complaint, Mr. Berry authenticated all three exhibits introduced into evidence.

Mr. Berry explained that he incurred the Debt because he was spending money at that time to care for his 88-year old father, and he simply fell behind with his credit card bill.  Mr. Berry recalled the June 2007 telephone conversation during which defendant stated that the Debt would grow to $12,000 if legal action became necessary.  Mr. Berry testified that he felt "highly disturbed" and "disgusted" upon hearing that he might owe $12,000, since he did not have the financial means to pay that amount of money and since that amount of money "was like a million dollars to us."  Mr. Berry testified further that his wife cried in response to the possibility of owing $12,000, and that among other reactions, he lost sleep and felt fearful whenever he heard the telephone ring at home.

Mrs. Berry then testified at the hearing.  She is 56 years old and has been married to Mr. Berry for 16 years.  Mrs. Berry worked at a plastics company for 29 years, but was laid off in 2006.  She has looked for work since and would like to work again, but has found difficulty finding new employment in part because she perceives employers as hesitant to hire someone of her age.  Along with other testimony that further corroborated the allegations in the complaint, Mrs. Berry recounted defendant's August 2007 telephone call to her and confirmed the stressful impact of defendant's statement that the Debt could grow to $12,000.  She added that the stress from defendant's communications caused her to lose her hair, and that weeks passed before they could settle down after defendant's last call to them.  During that time, according to Mrs. Berry, communicating with

6

her husband was difficult because the possibility of owing $12,000 to defendant weighed on his mind constantly.

On August 17, 2009, counsel for plaintiffs submitted affirmations with exhibits in support of plaintiffs' request for an award of costs and attorney fees.

## DISCUSSION

### *Liability*

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted). Here, the Court ordered an evidentiary hearing as to damages because defendant's default, by itself, could neither quantify nor sustain an award of damages. Plaintiffs' complaint contains well pleaded allegations, corroborated at the evidentiary hearing, that defendant called plaintiffs four times in the summer of 2007 regarding the Debt. In these four telephone calls, defendant refused to identify itself; claimed that HSBC Bank authorized its actions without any basis for saying so; threatened a lawsuit that it never filed and that HSBC Bank almost certainly never knew that it was threatening; claimed that the Debt would increase by over 15 times without any basis for this claim; harassed Mr. Berry through its comment about going "from the pot directly into the fire"; made a vague threat against Mr. Berry to "do what's necessary to protect their interests"; and harassed Mrs. Berry through derisive comments in

7

August 2007 about the reason for Mr. Berry's unavailability when it called. The Court finds that these actions violated the provisions of the FDCPA cited in plaintiffs' complaint. Defendant's actions, accordingly, will serve as the basis for the Court's assessment of damages.

### *Statutory Damages*

Section 1692k(a)(1) of the FDCPA provides for statutory damages of up to $1,000 per plaintiff. *See also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998) ("All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling.") (citations omitted). Mr. and Mrs. Berry each seek the maximum amount of statutory damages in this case given the frequency and nature of defendant's harassing conduct. "In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Here, the Court notes that defendant called plaintiffs four times within three months in the summer of 2007. Each of these telephone calls featured conduct by defendant that violated the FDCPA. Defendant's representation that the Debt would explode from approximately $770 to $12,000 was particularly outrageous and utterly without factual or statutory justification.

8

The Court finds also that defendant most likely never communicated with HSBC Bank about possible litigation and never intended to commence a lawsuit to collect the Debt. Rather, the Court finds that defendant engaged in a pattern of harassing communications with intent to intimidate plaintiffs into paying the Debt before investigating their rights under the FDCPA. For these reasons, the Court finds that the maximum statutory damages award is appropriate for each plaintiff.

### *Actual Damages*

The FDCPA provides for compensation for "any actual damages sustained by such person as a result of [FDCPA violations]." 15 U.S.C. § 1692k(a)(1). "Actual damages compensate a plaintiff for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA." *Milton v. Rosicki, Rosicki & Assocs., P.C.*, No. 02-CV-3052, 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007) (citation omitted). Here, plaintiffs have requested actual damages in the amount of $4,000 for Mr. Berry and $2,000 for Mrs. Berry based on the stress that they experienced from defendant's communications, particularly defendant's representation that the Debt could grow from approximately $770 to $12,000. The Court has some reservation about the amount of plaintiffs' request, given the absence of documentation from a medical or psychological professional about stress that was presented to the Court as severe enough to cause physical manifestations. Additionally, the Court finds that plaintiffs should have harbored

9

at least a little skepticism about the outrageous increase in the Debt that defendant described without foundation. Nonetheless, the Court finds plaintiffs' testimony generally credible. Plaintiffs are a middle-aged married couple living on a fixed income while caring for a parent now living in a nursing home. Plaintiffs' employment history, while suggesting some level of education, does not suggest the type of financial or legal sophistication needed to know exactly why defendant's representation about the increase in the Debt was unfounded, even if they should have sensed that the representation was dubious. Adding in the frequency of defendant's calls and defendant's vague threat in its telephone message that it and HSBC Bank were prepared "to do what's necessary to protect their interests," plaintiffs did not act unreasonably in fearing that something bad would happen to them soon at the hands of persons unknown who refused twice to identify themselves. Accordingly, the Court finds that Mr. Berry, as the debtor of record, should receive $2,000 in actual damages, while Mrs. Berry should receive $1,000.

### *Costs and Attorney Fees*

The FDCPA authorizes successful litigants to receive "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The prevailing plaintiff in a FDCPA action is entitled to an award of reasonable attorneys' fees and expenses regardless of whether any statutory

or actual damages are awarded. *See Savino*, 164 F.3d at 87; *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989) (citation omitted). As to how district courts should calculate attorney fees when such an award is appropriate, this Court noted in a recent FDCPA case that

> A reasonable hourly rate is the "prevailing market rate," i.e., the rate "prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984); *see also Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496, 506 (2d Cir. 1980) ("[F]ees that would be charged for similar work by attorneys of like skill in the area" are the "starting point for determination of a reasonable award."). The relevant community, in turn, is the district in which the court sits. *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).
> Determination of the "reasonable hourly fee" requires a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel. *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005). This inquiry may include judicial notice of the rates awarded in prior cases, the court's own familiarity with the rates prevailing in the district, and any evidence proffered by the parties. *Id.* The fee applicant has the burden of showing by "satisfactory evidence" that the requested hourly rate is the prevailing market rate. *Blum*, 465 U.S. at 896 n.11.

*Fontana v. C. Barry & Assocs., LLC*, No. 06-CV-359, 2007 WL 2580490, at *2 (W.D.N.Y. Sept. 4, 2007) (Arcara, C.J.).

The Second Circuit revisited case law governing attorney fee calculations recently and explained just weeks ago that

> In [*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008)], we undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time under the traditional "lodestar" approach to attorney's fees (the product of the attorney's usual hourly rate and the number of hours worked, which could then be adjusted by the court to set "the reasonable fee"),

11

and the separate "Johnson" approach (a one-step inquiry that considered twelve specified factors to establish a reasonable fee). 493 F.3d at 114. Relying on the substance of both approaches, we set forth a standard that we termed the "presumptively reasonable fee." *Id.* at 118. We directed district courts, in calculating the presumptively reasonable fee, "to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 117 (emphasis in original). The presumptively reasonable fee boils down to "what a reasonable, paying client would be willing to pay," given that such a party wishes "to spend the minimum necessary to litigate the case effectively." *Id.* at 112, 118.

*Simmons v. N.Y. Trans. Auth.*, ___ F.3d ___, 2009 WL 2357703, at *3 (2d Cir. Aug. 3, 2009).

Here, counsel for plaintiffs have submitted detailed affirmations specifying the amount of time spent litigating this case. In reviewing the time listed in counsel's affirmations, the Court finds that one minor correction in Mr. Hiller's affirmation is necessary. In his affirmation, Mr. Hiller lists 0.3 hours spent on March 3, 2008 reacting to a text order from this Court that contained an order to show cause. A review of the docket does not reveal any orders to show cause that the Court issued in this case, let alone on March 3, 2008. Therefore, the Court will disregard that item in Mr. Hiller's affirmation.

Otherwise, the hours that counsel claim to have spent on this case appear reasonable. In assessing whether a reasonable, paying client looking to minimize expenses would be willing to pay for the hours claimed here, the Court bears in mind the provision of the FDCPA awarding attorney fees to successful litigants. Without that provision, a reasonable, paying client likely would not spend

approximately $6,000 in fees and costs to obtain a damages award of $5,000. Factoring in that provision, however, a reasonable, paying client likely would endorse the investment of time that counsel claim here. Counsel's affirmations show that well over half of the 25.1 hours claimed were invested after the decision to apply for an entry of default was made. Where a debt collector fails to appear in an FDCPA case, meaning that judgment as to liability is assured and an award of attorney fees is likely, a reasonable, paying client likely would want counsel to prosecute the case to a successful resolution. Additionally, the Court notes that the total amount of time spent by counsel here roughly equals the amount of time that it considered reasonable in a recent FDCPA case that also ended with a default judgment. *See Fontana*, 2007 WL 2580490, at *3 (approving a claim of 22.6 attorney hours and 4.0 paralegal hours).

The Court finds further that counsel's requested hourly rate is reasonable as well. In *Fontana*, the Court set the attorney hourly rate at $200 for partners and $150 per hour for associates. The Court still finds these 2007 rates reasonable, with a slight upward adjustment as determined in another FDCPA case in this District earlier this year. *See Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp. 2d 389, 395 (W.D.N.Y. 2009) (McCarthy, M.J.) (setting the hourly rate in an FDCPA case at $215 per hour for Mr. Hiller and $175 per hour for his associate, Amanda Jordan). One very minor correction is necessary, however. Although counsel cite to *Miller* in support of their requested hourly

rates, their calculation of associate attorney fees uses a rate of $180 per hour. The Court will disregard this discrepancy as a typographical error and will use the $175 associate hourly rate determined in *Miller*.

Lastly, the Court will note for the record that it agrees with counsel's request for reimbursement of the $350 filing fee that they incurred, along with the $60 fee that they incurred in relation to service of process.

Plaintiffs' award of costs and fees thus totals $5,999 as follows: 25.1 hours for Kenneth Hiller at $215 per hour, totaling $5,396.50; 1.1 hours for Amanda Jordan at $175 per hour, totaling $192.50; $350 for the court filing fee; and $60 for a service fee.

## CONCLUSION

For all of the foregoing reasons, the Court awards plaintiffs $2,000 in statutory damages, $3,000 in actual damages, and $5,999 in costs and attorney fees.

Since all proceedings here now have concluded, the Clerk of the Court is directed to close this case upon entry of judgment.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: August 27, 2009